UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:24-cv-00096-MR-SCR

| | |
|---|---|
| CEDRIC CALDWELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) **MEMORANDUM AND** ) **RECOMMEDATION** |
| FNU CARROLL, et al., | ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 29), as well as the parties' associated briefs and exhibits (Doc. Nos. 30, 30-1, 32, 34), and Plaintiff's "Motion to Strike Insufficient Defense from Answer" (Doc. No. 35) and Defendants' response (Doc. No. 36).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1).

After fully considering the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 29) be granted. The undersigned will deny Plaintiff's motion to strike defense (Doc. No. 35).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pro se Plaintiff Cedric Cardwell ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. On or about March 28, 2024,[1] Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and 1985 against

---

[1] Plaintiff dated his Complaint March 28, 2024, but his Complaint is postmarked on April 1, 2024, and was docketed on April 4, 2024.

FNU Carroll, identified as a Sergeant at Alexander Correctional Institution ("Alexander"), and FNU Adkins and FNU Lay, both identified as "Lower Rank Officials" at Alexander, seeking to state claims for retaliation, sexual harassment, and sexual abuse. Plaintiff alleged that, on February 18, 2024, after he caught Defendant Carroll planting a homemade weapon in Plaintiff's cell, Defendant Carroll directed Defendants Lay and Adkins to "mess with" Plaintiff "in a sexual[ ] way," and that Defendants Lay and Adkins, thereafter, conducted a strip search of Plaintiff, requiring him to repeatedly shake his penis up and down and spread the cheeks of his buttocks "over-and-over."[2] (Doc. 1; see id. at 6 (Certificate of Service)). With his unverified Complaint, Plaintiff included a copy of a February 19, 2024 grievance, Grievance No. 4870-2024-MPODE-22407 ("No. 22407"), addressing the alleged incident, and Alexander's February 21, 2024 Screening Response accepting the grievance. (Doc. No. 1-1 at 1, 3). Plaintiff alleges that he "never got a STEP 1 Response or STEP 2." (Doc. No. 1 at 4). Then, on or about April 29, 2024, Plaintiff mailed copies of the Step Two and Three responses for this grievance to the Court, together with a purported motion stating that he "[j]ust received" the Step Three response on April 19, 2024. (Doc. No. 12 at 3, 5). These records show that, on April 3, 2024, Plaintiff appealed the March 21, 2024 Step Two response, which appears to have issued from Marion, not Alexander.[3] (Id. at 3). The Step Three response, dated April 16, 2024, dismissed the Grievance No. 22407 for lack of supporting evidence. (Id. at 5).

On May 2, 2024, the Court allowed Plaintiff's First Amendment retaliation claim against Defendant Carroll and Plaintiff's Eighth Amendment sexual abuse claim against all Defendants to

---

[2] In a purported discovery request included with the Complaint, Plaintiff sought camera footage of the events he alleged in his Complaint. (Doc. No. 1 at 10).

[3] In the same purported discovery request as above, Plaintiff states that he was transferred from Alexander to Marion Correctional Institution after the alleged incident and before he filed the Complaint. (See Doc. No. 1 at 10).

survive initial review. (Doc. No. 8 at 10). The Court dismissed Plaintiff's remaining claims for Plaintiff's failure to state a claim for relief. (Id.). On or about May 28, 2024, Plaintiff filed a Supplemental Complaint in this matter alleging acts of retaliation occurring since Plaintiff filed his Complaint and adding two new Defendants, Timothy Metcalf and FNU Suttles, identified as a Unit Manager and Sergeant in Restrictive Housing, respectively. (Doc. No. 17; Doc. No. 17-2 (postmark)). On June 17, 2024, the Court allowed Plaintiff's retaliation claim against these Defendants to pass initial review. (Doc. No. 21).

Defendants now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 29). In support of their motion, Defendants submitted a brief, a Declaration of Counsel, and copies of Plaintiff's fully exhausted grievances between January 1, 2024, and July 31, 2024. (Doc. Nos. 30, 30-1). Defendants argue that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action. (Doc. No. 30 at 1, 8-11). Invoking "[t]he video referenced by Plaintiff" in his Complaint, Defendants also argue that Plaintiff's Eighth Amendment claim fails because policy required a strip search under the circumstances and video evidence shows that the strip search was conducted privately in approximately 30 seconds. (Id. at 13). Furthermore, Defendants argue that the retaliation claims against Defendants Carroll, Lay, and Adkins for which the strip search constituted the alleged retaliatory act, also necessarily fail "because there was a legitimate purpose[ ] in completing the strip search."[4] (Id. at 14).

On September 3, 2024, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants'

---

[4] In their memorandum, Defendants state that the video evidence would be manually filed. (Doc. No. 30 at 3). The Court has received no such evidence or a motion to manually file the same. For this and other reasons, the Court will only consider Defendants' exhaustion argument here.

motion. (Doc. No. 31). Plaintiff timely responded. (Doc. No. 32). In opposition to Defendants' motion, Plaintiff submitted a brief and select grievance records with Plaintiff's associated commentary thereon. (Doc. Nos. 32, 32-1, 33). Defendant replied. (Doc. No. 34).[5]

This matter is now ripe for adjudication.

## II. DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust his administrative remedies during the pendency of a section 1983 action. Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). An inmate, however, is not required to

---

[5] Plaintiff also filed a motion to strike Defendants' defense of fraud. (Doc. No. 35). Defendants responded. (Doc. No. 36). The Court will deny Plaintiff's motion for the reason stated in Defendants' response. That is, Defendants have not filed an Answer in this case and there are, therefore, no asserted defenses to strike at this time.

affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216). "[D]espite the fact that failure-to-exhaust is an affirmative defense, a prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the fact of the complaint.'" Id. (quoting Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005)).

A prisoner, however, need only exhaust those remedies actually available. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance).

The North Carolina Department of Adult Correction ("NCDAC") has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety). Inmates are required to exhaust administrative remedies with the NCDAC in accordance with ARP. See id. An inmate does not exhaust administrative remedies with the NCDAC until all three steps are completed. See id.

Here, Plaintiff submitted with his Complaint a copy of a grievance regarding the alleged

subject incident and Alexander's Screening Response accepting the grievance. (Doc. No. 1-1 at 1, 3). Plaintiff alleged that he never received a Step One or Step Two response to that grievance (Doc. No. 1 at 4), implying that the grievance was not properly processed by Alexander officials. About a month later, however, Plaintiff mailed copies of the Step Two and Step Three responses to the Court, which showed that exhaustion occurred on April 16, 2024, when the grievance was dismissed at Step Three for lack of supporting evidence. (Doc. No. 12 at 3, 5).

In support of their motion to dismiss, Defendants provide copies of Plaintiff's five fully exhausted grievances submitted from January 1, 2024, to July 31, 2024, as provided by the Inmate Grievance Resolution Board ("IGRB") through Kimberly Grande, the Executive Director of the NCDAC IGRB. (Doc. No. 30-1). See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Doc. No. 30-1 at 1-2, ¶¶ 2-3, 5-6, 8-9: Dec. of Counsel (attesting to authenticity of grievances) and Doc. 32 No. at 2 (Plaintiff acknowledging that the grievances submitted by Defendants are from "STAFF original files"). In these documents, Grande provides that these grievances were the only ones filed by Plaintiff and exhausted through Step Three of the grievance process during the stated time frame. (Doc. No. 30-1 at 16).

These grievance records include Grievance No. 22407, and, along with three other unrelated grievances, a grievance Plaintiff submitted on May 2, 2024, regarding the alleged May 1, 2024 incident with Defendants Metcalf and Suttles that formed the basis of Plaintiff's Supplemental Complaint (Grievance No. 4870-2024-MPODH-24809 ("No. 24809")). (Id. at 3-6, 8-15, 17-20, 22-25). These integral grievance records show Plaintiff was notified of and appealed from the Step One response to Grievance 22407 no later than March 12, 2024. (Id. at 5). These

integral grievance records also show that Grievance No. 24809 was accepted, and a Step One response was issued on May 13, 2024. (Id. at 10). Plaintiff appealed the Step One response the same day. (Id.). These records further show that the Step Two response was issued on May 24, 2024, and, on May 31, 2024, Plaintiff appealed to Step Three. (Id. at 11). Finally, these records show that Step Three review of Grievance No. 24809 was complete on June 4, 2024. (Id. at 8).

In response, Plaintiff primarily restates and elaborates on the allegations underlying his claims. (Doc. No. 32 at 1-2). Plaintiff also states that "they refuse[d] to follow the proper policy and procedures" relative to Grievance No. No. 22407 because he never received a copy of the Step One or Step Two responses. (Id. at 2). Plaintiff states that, once he got settled at Marion, he told various officials there about Grievance No. 22407 and "the facility got scared" and "quickly sent [Plaintiff] back" because they "did not want any part of the complaint." (Id. at 3). Plaintiff also asserts that, on June 20, 2024, after Defendants Metcalf and Suttles found out that they were added as Defendants, Plaintiff was transferred to his current facility, Scotland Correctional Institution.[6] (Id. at 4).

Notwithstanding these contentions, the record here plainly shows that Plaintiff did not exhaust his administrative remedies before filing his Complaint in this matter, or before he supplemented his Complaint with claims against Defendants Metcalf and Suttles. That is, his grievance regarding his original claims was not exhausted until April 16, 2024, approximately two weeks after he filed the Complaint, and his grievance relative to his claims against Defendants Metcalf and Suttles was not exhausted until June 4, 2024, a week after Plaintiff filed his

---

[6] None of the grievance records Plaintiff submitted in response to Defendants' motion relate to or inform whether he exhausted the grievances relevant here. That is, Plaintiff provided (1) a Screening Response by Defendant Metcalf rejecting an unrelated grievance for Plaintiff having an active grievance in process (Doc. No. 33 at 1); (2) a Step One response to a different unrelated grievance (Id. at 3); and (3) Step One and Step Three responses to yet another unrelated grievance (Id. at 5-6, 8-9).

Supplemental Complaint. Moreover, the record clearly evidences Plaintiff's access to and adeptness at navigating the grievance process, as well as the proper and complete processing of grievances by NCDAC facility officials and the IGRB. Finally, Plaintiff makes no showing that administrative remedies were unavailable to him. Rather, the records shows that Plaintiff simply decided to file this action (and his Supplemental Complaint) before the grievance process was complete.

For these reasons, the undersigned will recommend that this action be dismissed without prejudice for Plaintiff's failure to exhaust administrative remedies relative to his claims before filing his Complaint and Supplemental Complaint in this matter. See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011).

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 29) be granted and that the action be dismissed without prejudice for Plaintiff's failure to exhaust administrative remedies.

### III.     RECOMMENDATION AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's Motion to Dismiss (Doc. No. 29) be **GRANTED**, and that Plaintiff's Complaint (Doc. No. 1) and Supplemental Complaint (Doc. No. 17) be **DISMISSED WITHOUT PREJUDICE** for Plaintiff's failure to exhaust administrative remedies.

**IT IS ORDERED** that Plaintiff's "Motion to Strike insufficient defense from Answer" (Doc. No. 35) is **DENIED**.

### IV.     TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within

fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**SO ORDERED AND RECOMMENDED**.

Signed: November 1, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge